PEOPLE ex rel. REYNOLDS v. COMMON COUNCIL OF CITY OF BUFFALO

(Superior Court of Buffalo, Special Term.   October 1, 1892.)

1. EMINENT DOMAIN—REMEDIAL ACT—CONSTRUCTION—PERMISSIVE WORDS.

Laws 1890, c. 393, declaring that the common council of Buffalo is authorized to audit and adjust the amount of damage done to certain private property by the opening of a street, and providing that, on the appraisal of such damage, the city shall raise the same by assessment, and pay it over to the owner of the property, is mandatory.

2. SAME—REPEAL OF ACT—VESTED RIGHTS.

Where, under an act (Laws 1890, c. 393) directing a city to audit and adjust the amount of damage done to certain private property by the opening of a street, providing for an appraisal thereof by commissioners, and requiring the city to raise the amount by assessment and pay it over to the owner of the property, the commissioners have made the appraisal, and their report has been confirmed by the court, the claim of the owner against the city cannot be affected by a subsequent repeal of the act, (Laws 1891, c. 42.)

3. RES ADJUDICATA.

Where, on appeal from an order denying a stay of proceedings of commissioners appointed to appraise the damages to certain private property from the opening of a street by the city, under an act authorizing such appraisal, and directing the common council to audit and adjust the claim, and raise the same by assessment, to be paid to the owner of the property, it is decided that the act was within the power of the legislature, and was warranted by the circumstances, and that a certain contract between the city and such owner does not estop him, such questions are res adjudicata on a subsequent application for a writ of mandamus to compel the common council to audit and adjust the damages as appraised by the commissioners.

Application by Amelia E. Reynolds for a writ of mandamus to compel the common council of the city of Buffalo to audit and adjust the damages to her property by the opening of Elmwood avenue.   The damages were appraised by commissioners appointed under Laws 1890, c. 393, authorizing the city of Buffalo to audit and adjust relator's claim, and their report was confirmed by the court.   Afterwards, by Laws 1891, c. 42, the act of 1890 was repealed.   For a more particular statement of facts and the provisions of the act of 1890, see 21 N. Y. Supp. 592.

O. O. Cottle, for relator.

William F. Mackey, for defendant.

HATCH, J.   Upon the motion for a stay of proceedings, Judge Beckwith, in an elaborate and able opinion, determined that it was within

the power of the legislature to pass an act for the relief of the relator, and that the facts of this case fully warranted its intervention.   He further held that the fact that the execution by her of the contract set out in the return, based upon the motion for a stay, and proved before the commissioners, did not work an estoppel of her right to have her claim for damage considered under the act, although being highly proper for consideration by the commissioners in determining the amount of loss she had sustained.   All of these matters appeared in the record on appeal to the general term.   They were considered by the court, and the court concurred in the opinion of Judge Beckwith, as the court at special term had previously considered itself bound by the decision and its logic on the motion to confirm the report, from which the appeal was taken.   It follows, therefore, that as to these questions the decision is res adjudicata.

The act provides that when the award shall be made by the commissioners of the damage sustained, and the report approved by the court, "the same shall be raised by the city by assessment upon the property benefited by the opening of Elmwood avenue from North street to Butler street, and the amount of such assessment, when collected, shall be paid over to Amelia E. Reynolds." This provision of the act is mandatory, and imposes a plain duty. The court has said by its several judgments that the award of the commissioners is in accordance with law, and creates a liability against the city. All of the facts alleged in the return have been considered. This determination, therefore, is not an idle ceremony, but creates a mandate to be obeyed; and, when defendant refused to obey it, it unjustly refused, and consequently must be compelled to act by the writ of the court, unless excused by other matters. It is, however, said that when the motion was argued before Judge Beckwith, and when the court confirmed the report of the commissioners, the repealing statute had not been passed. This is true, but the act was before the general term, although objected to by the relator. As the general term expressed no written opinion, I have examined this question.

The effect of confirmation of the commissioners' report was to determine that the relator was entitled to payment of the sum awarded, which the city was to collect and pay over. What before existed as a proceeding now ripened into a judgment, to be paid in the manner specified by the statute. Mayer v. Mayor, etc., 101 N. Y. 288, 4 N. E. Rep. 336; Reinhardt v. City of Buffalo, (Super. Buff.) 15 N. Y. Supp. 844. It cannot, therefore, be attacked except in a direct proceeding, unless it be void. In re Ferris, 10 N. Y. St. Rep. 483. The latter is claimed upon the ground that there is now no law in existence upon which it can rest. It was said by Chief Justice Marshall in Fletcher v. Peck, 6 Cranch, 87–135: "If an act be done under a law, a succeeding legislature cannot undo it. The past cannot be recalled by the most absolute power. * * * When, then, a law is in the nature of a contract, when absolute rights have vested under that contract, a repeal of the law cannot divest those rights." Cited with approval in People v. O'Brien, 111 N. Y. 48, 18 N. E. Rep. 692. In Butler v. Palmer, 1 Hill,

324, the following language from Puffendorf is quoted with approval: "The law itself may be disannulled by the author, but the right acquired by virtue of that law while in force must still remain." Id. 335. Many other authorities might be cited to the same effect. It remains, therefore, to see whether the steps taken have vested in the relator a legal right. In Cornell v. Donovan, 14 Daly, 296, it is said that a judgment is a contract of the highest nature. In Mahaney v. Penman, 4 Duer, 606, it was declared to be a contract within the meaning of that clause of the federal constitution which declares that "no state shall pass any law impairing the obligation of contracts." A like rule was announced in Mather v. Bush, 16 Johns. 233; Roosevelt v. Cebra, 17 Johns. 108. Any law which impairs the obligation of a contract by preventing its enforcement, or which materially abridges the remedy for enforcing it which existed at the time, without supplying an adequate remedy in substitution therefor, infringes the constitution. McGahey v. Virginia, 135 U. S. 662, 10 Sup. Ct. Rep. 972. It matters not whether the judgment be treated either absolutely or technically as a contract, it is yet settled beyond dispute that the rights acquired thereunder are vested rights, and have been so held in proceedings of this character. In re Rhinebeck & C. R. Co., 67 N. Y. 242; People v. Common Council, 78 N. Y. 56. In the latter case Church, C. J., said:

"We are of opinion that the award in this case became, at the expiration of ten days from the filing of the report of the commissioners, final and conclusive upon both parties, and that the relator then had a legal right to compel the performance of the duties enjoined by statute upon the common council for the assessment and collection of the amount awarded. It follows that the common council could not, by resolution or otherwise, deprive the relator of that right, and that the resolution of rescission as to him was unauthorized and void." 78 N.Y. 60, 61.

In Gilman v. Tucker, 128 N. Y. 204, 28 N. E. Rep. 1040, Ruger, C. J., said:

"We must bear in mind that a judgment has here been rendered, and the rights flowing from it have passed beyond the legislative power, either directly or indirectly, to reach or destroy. After adjudication, the fruits of the judgment become rights of property. These rights became vested by the action of the court, and were thereby placed beyond the reach of legislative power to affect."

The authorities cited by counsel for the city relate to actions pending, or were to recover penalties, in which case the authorities are uniform in holding that a repeal of the statute wipes out the penalty, and even extends to a judgment obtained, which, after repeal, will be stayed in its execution. This distinction was noted in Van Dyck v. McQuade, 86 N. Y. 49. It follows from these authorities that the relator's award remains unaffected by the repeal of the statute, and that it is the duty of the defendant to audit and adjust it. It is a mistaken view of the law upon which their refusal is based.

Let a peremptory writ issue as prayed for, with costs to the relator.